HEARD APRIL TERM, 1875.

## THOMPSON *vs.* THOMPSON.

Where, before the adoption of the Code, costs were taxed under a bill in equity, and no appeal was taken: *Held*, That the Court would not consider the question whether, since the adoption of the Code, costs under the former laws could be taxed.
Where there is no agreement in writing for a different rate of compensation to a Referee, his costs must be taxed at $3 a day, as prescribed by Section 339 of the Code.
Where, under a bill to wind up a decedent's estate, the creditors agree that certain fees of an attorney employed to defend a claim against the estate shall be payed out of the assets: *Held*, That they should be taxed to be paid out of the creditors' shares.
Where the statement of facts upon which an execution is founded appears only in the exception itself, the Court cannot consider it. The facts must be made to appear in the mode pointed out by the Code.

BEFORE MOSES, J., AT NEWBERRY, FEBRUARY, 1875.

This case was heard upon a brief, which is as follows:

"The bill in this case was filed by the plaintiff, as executrix of her late husband, Thos. W. Thompson, for the purpose of calling on the creditors and marshaling assets for the sale of the real estate of the said testator to and in paying his debts, and for dower in said real estate. The dower was laid off, the real estate sold, and the assets marshaled by the report of Silas Johnstone, as Special Referee, to which exceptions were filed. While said case was pending on the report and exceptions, and before they were heard, Silas Johnstone filed his petition *in re* this case, praying that the costs and fees

allowed him in said report, as late Commissioner in Equity, and as Referee, should be paid to him, which was ordered to be done by His Honor M. Moses, at Chambers, on the 9th day of December, 1873. At June Term, 1874, the case came up regularly for hearing on the report and exceptions, except those disposed of by the aforesaid order at Chambers, and His Honor confirmed the said report. From these two orders the creditors have appealed.

"A house and lot was assigned to the plaintiff for life, as her dower in the real estate of her said husband, and at her death was sold by order of the Court, and D. Mower bought and paid for it. The two defendants, Thos. A. and John M. Thompson, filed proceedings against Cynthia Mower and G. S. Mower, the heirs at law of D. Mower, claiming homestead in said house and lot. They notified Mr. Fair, the attorney of the plaintiffs, of this suit, and required him to defend the same, and he agreed to do so, and requested Jones & Jones to aid in said defense, and consented that their fee and costs should be paid out of the estate of T. W. Thompson. The attorneys for the creditors, in writing, admitted the above statement, and consented that said costs and fee should be paid out of the estate. The Referee refused to allow them.

"The exceptions and Exhibit A filed with the report will sufficiently explain the points at issue.

## EXHIBIT " A."

*Taxation of Costs, Counsel Fees, etc.*

### IN EQUITY.

Mr. Fair, bill 20, brief 5, special matter 5, 71
references 355, commissions 8....................$393 00
Mr. Boozer, answer 20, brief 5, special matter 5...  30 00
Mr. Baxter, 25 references............................ 125 00
Mr. Jones, 18 references.............................  90 00
Mr. Summer, 2 references............................  10 00
Mr. Caldwell, 1 reference............................   5 00
Messrs. Garlington & Suber, 7 references........ 350 00
Johnstone, Commissioner's writ and proof 50, 4
summons and proof 2.50, special witness 1...   4 00

Amount carried forward.................$1,007 00

Amount brought forward..................$1,007 00

Special defendant 1, report 3, searches 1, 13
  references 13, deeds 12, stamps 5.50........... 35 50

Bonds 4 Commissioner's sales, 51.75, writ dower
  50, rule 3, writ 12, P. orders 2.................. 71 25

Stamp 10, copy 15.45, recording 4.50, 128
  claims 256........................,........... 285 95

Serving 15 notices auctioneer 4, Commissioner's
  dower 13........................................ 32 00

Printer 43.50, surveyor 20.45, Clerk Court 4,
  axemen 2....................................... 69 75

Paysinger, Sheriff.................................. 8 00

Houseal, Sheriff................................... 2 25—$1,196 90

### In Common Pleas.

Plaintiff's costs, Messrs. Fair, Pope & Pope..... 25 00
Referee, Thomas M. Lake 3, printer 9............ 12 00— 37 00

### In Ordinary.

John T. Peterson, Ordinary fees, (paid by Com-
  missioner)...................................... 60 00— 60 00

### In Probate Court.

*Ex parte* T. B. Chalmers, petitioner's adminis-
  trator ......................................... 35 00
J. C. Leahy, Justice of the Peace fees, &c....... 20 50— 55 50
Fee to counsel for estate, (Mr. Fair)............. 500 00
Fee to counsel Referee Johnstone................ 300 00— 800 00

$2,149 40

## APPENDIX.

"Just as I had closed the foregoing report, in which I had ex-
cluded a claim for bill of costs from the Probate Court in the case
of *John M. Thompson* vs. *Cynthia Mower et al.*, petition for homestead,
amounting to $272.90 a paper was presented to me, signed by at-
torneys representing the creditors, consenting 'to the payment of
this claim from the assets of the estate of T. W. Thompson,' to-
gether with a statement of the facts connected with the matter.

These papers accompany this report. The attorneys representing Mr. Fair, who was of counsel in the case, ask leave to withdraw from the claim the charge of $100 for counsel fee in his behalf, so that the bill amounts in gross to $172.90. These latter attorneys, representing Mr. Fair, and also, through him, the estate of the testator, object to the allowance of the claim, and upon a review of the facts and authorities furnished to sustain the claim, I do not see wherein the estate of the testator is liable for the costs of the petition. The creditors may consent to do what they please with their own, and if they choose to pay this bill of costs, they can do so by contributing one and seven-tenths per cent. from their respective demands.

"July 25th, 1873.                    SILAS JOHNSTONE."

"The following exceptions are taken to the report of Silas Johnstone, Special Referee in this case, dated 23d day of July, 1873, on the part of the following creditors: G. M. Bowers, Henry Dominick, W. J. Duffie, G. W. Glenn, J. H. Hunt, L. J. Jones, Wm. Mars, J. B. O'Neall, estate; B. J. Ramage, J. S. Renwick, F. E. Sloan, J. J. Sloan, Jenet Sloan, James Sloan, Thos. G. Sloan and Cynthia Mower.

"1. Because the Referee erred in taxing the costs under the old fee bill, instead of under Code or new fee bill.

"2. Because the Referee erred in allowing himself under the old fee bill costs to the amount of $415.70 and a fee of $300 besides, making in all $715.70.

"3. Because the Referee erred, even supposing he is entitled to tax his costs under the old fee bill and also under the Code, in allowing himself under the old fee bill $256 for 128 claims, when he only reports on 74 claims; and also his regular fee, $13 for thirteen days on reference, when the fee bill only allows $1 per day for each day on reference, no matter how many claims may be established on one day.

"4. Because the Referee erred in allowing himself a fee of $300, instead of $3 for every day spent in the business of the reference as allowed by the Code, and no more, except by an agreement of the parties in writing.

"5. Because the Referee erred in not allowing the costs and fees incurred by Cynthia Mower, as administratrix of D. Mower, deceased, in defending the title of the said deceased to a house and lot purchased by him at a sale made in this case by an order of this Court, notwithstanding the attorney of the estate of T. W. Thompson, de-

ceased, Col. S. Fair, was vouched to defend said title, and requested Messrs. Jones & Jones to assist him in the defense, and agreed that the expenses should be paid out of the estate, and notwithstanding the attorneys for the creditors consented, in writing, that the said costs and fees should be paid out of the estate of T. W. Thompson.

"6. Because the Referee erred in allowing the costs in the following case as preferred claims against the estate of the said T. W. Thompson, deceased, without some evidence that the same could not be collected out of the defendants, namely, S. A. Thompson, executrix, against the following persons: John A. Harp, $20; F. S. Paysinger, $5.60; W. F. Robertson, $18.92; A. C. Glasgow, $5.60; J. S. Caldwell and others, $22.25; F. L. Boozer, $5.40; H. A. Bailey, $5.50; Abram Wicker, $5.70; Henry Hendrix, $14.50."

Order of Moses J., at Chambers, December 9th, 1873:

"On hearing the petition of Silas Johnstone, Esq., and on motion of Mr. S. Pope, petitioners' attorney, it is ordered that Thomas M. Lake, late Clerk of this Court, in whose hands the funds belonging to the estate of Thomas W. Thompson, deceased, are, do pay unto Silas Johnstone, as Referee herein, the sum of three hundred dollars, and also to Silas Johnstone the sum of ninety-eight dollars and two cents, the balance of costs due to him herein as late Commissioner in Equity for Newberry—in all three hundred and ninety eight dollars and two cents."

*Notice of appeal:*

"Silas Johnstone, Esq., or his attorney, will take notice that an appeal to the Supreme Court of South Carolina will be taken by G. M. Bowers, Henry Dow, W. J. Duffie, G. W. Glenn, J. H. Hunt, L. J. Jones, W. Mars, J. B. O'Neall, B. J. Ramage, J. S. Renwick, F. E. Sloan, J. J. Sloan, Jenet Sloan, James Sloan, Thomas G. Sloan and C. Mower from the decree of His Honor Montgomery Moses, Judge of the Seventh Judicial Circuit, made in the above stated action, and filed on the ninth day of December, 1873."

Decree of Moses, J., February 27, 1875:

"These proceedings were instituted by bill in the Court of Equity for Newberry District, and they are now heard in this Court on the report of the Referee and exception thereto.

"The order of this Court appointing the Referee, passed before the adoption of the Code of Procedure, referred to him all matters herein previously referred to the Commissioner in Equity. The Referee did not report on the exceptions (it appears he was not served with a copy of them) and there was no settlement of the case by him. No exceptions were taken to the manner and form of the report, which was submitted according to the rules of practice of the Court of Chancery, and this Court is satisfied with it.

"It is, therefore, on hearing the report of the Referee, the exceptions thereto and argument of counsel, ordered, adjudged and decreed that the exceptions be overruled, that the report be confirmed, and that the report be made the judgment of this Court."

*Notice of appeal:*

"Take notice that J. M. Bowers, Henry Dominick, W. J. Duffie, G. W. Glenn, J. H. Hunt, L. J. Jones, W. Mars, J. B. O'Neall, B. J. Ramage, J. S. Renwick, F. E. Sloan, Jenet Sloan, James Sloan, Thos. G. Sloan and C. Mower appeal to the Supreme Court of this State from so much of the decretal order of His Honor M. Moses in this case, dated the twenty-seventh day of February, A. D. 1875, as overrules their exceptions to the report of the Referee, dated the twenty-fifth day of July, A. D. 1873."

*Jones,* for appellants:

This was a bill in equity, filed in 1866, to call in creditors and marshal assets, and the principal questions presented for the consideration of the Supreme Court have relation to costs and fees.

I. The right to costs, as to their rate and amount, and as to the items to be allowed, are to be controlled by the statutes in force at the time of the final decision or taxation.—*Stewart* vs. *Lancoreaux,* 5 Abb., 14; *Crary* vs. *Norwood,* 5 Abb., 219; *Moore* vs. *Westen,* 14 How., 279; 6 Duer, 684; *Hurst* vs. *Middlebrook,* 14 How., 300; *Fisher* vs. *Hunter,* 15 How., 156; *McCann* vs. *Bradley,* 15 How., 79; *Holmes* vs. *St. John,* 4 How., 66; 2 Code Rep., 46; 19 Abb., 119; *Jackett* vs. *Judd,* 18 How., 385; *Jones* vs. *Underwood,* 18 How., 532; *Bennett* vs. *Westfall,* 15 How., 430; *Supervisors of Onondaga* vs. *Briggs,* 3 Duer, 173; *Clark* vs. *Lensser,* 1 Bail., 187.

By Section 329 of the Code all statutes establishing and regulating costs and fees are repealed and cannot now be enforced between plaintiff and defendant.

But as between attorneys and their clients, they are to be taxed according to the fee bill existing when the several services were rendered.—*Brooklyn Bank* vs. *Willoughby*, 1 Sand., 669.

II. Admitting, for argument's sake, that costs can be taxed under the old fee bill, the item of $256 for 128 claims established, which the Referee allowed himself as late Commissioner, should not be allowed, because under the old fee bill he is only allowed $1 for "each day engaged in holding references," no matter how many claims are established.—6 Stat., 335.

III. The fee of $300 allowed to S. Johnstone as Referee, by his own report, should be disallowed, because he is only entitled to $3 for every day spent on reference as Referee, except by agreement in writing signed by the parties.—§ 339, Code.

IV. Even admitting that costs can be taxed under the old fee bill for Mr. Fair, attorney for plaintiff, he is not entitled to $355 for 71 references when the Referee reports he only held 13 references.

The case of *McDonald* vs. *Williams*, Rice's Equity, 296, only applies to *solicitors for creditors*.

V. The fees and costs of Jones & Jones ($172.90) in defending the title to the house and lot sold by order of this Court to D. Mower should be paid out of the estate of Dr. T. W. Thompson.

1. Because as soon as the heirs of the purchaser, D. Mower, were sued for homestead in said house and lot, they vouched the plaintiff to defend the case, and she agreed to do so, and employed Jones & Jones to aid in defending it.

2. Because the creditors, the only persons interested in the estate, consented in writing that said costs and fee should be paid out of the estate.

3. Because the purchase money of said house and lot was paid into Court, and the Court is, therefore, bound in good faith to defend the purchaser's title.

*Blakely* vs. *Calder*, 1 Smith, 617.

Rowe on Judicial Sales, 25–161.

In *Waldo* vs. *Long*, 7 John. Rep., 174, it is decided that the costs incurred in an action brought against the grantee by a mortgagee on a prior mortgage of the same land by the grantor can be recovered against the grantor. See also *Middleton* vs. *Thompson*, 1 Speer, 70.

In *Boston Manufacturing Company* vs. *Fiske*, 2 Mason, 120, Judge Story laid down the rule "that the jury are at liberty to allow the

plaintiff, as part of his actual damages, any expenditures for counsel fees, or other charges, which were necessarily incurred in vindicating the right denied under his patent, and are not taxable in the bill of costs.

See also 1 Reeves' History of Eng. Law, 426, ed. 1869; 9 Wheat., 163; 3 Peters, 307; 9 Crunch, 126.

VI. The costs allowed as *nulla bona* costs in the cases named in exception eight should not have been allowed, for the reason that there was no evidence that the defendants could not pay the same.

*Pope, Pope & Fair,* contra :

1. The order of reference under which the report was submitted was granted in the case of *Sarah A. Thompson, executrix,* vs. *Thomas A. Thompson et al.*

2. The claim of Eliza Coleman was against the estate of Sarah A. Thompson, deceased, and not in any manner a debt against the estate of the testator, Thomas W. Thompson, marshaled under these proceedings. The payment of this claim by Williams, the administrator of Sarah A. Thompson, had been vouched before and allowed by the Probate Court, and no objection was raised to its allowance until after the report was filed.

3. The costs were taxed in the report in accordance with the fee bills of the severals Courts in which they had accrued. Section 329 of the Code of Procedure repeals all statutes establishing or regulating the costs and fees of attorneys, solicitors and counsel only,— not of officers of Courts,—and is not retrospective in its terms, as was the Act of 1827.

4. The Commissioner in Equity and the Referee, though the same individual, are two persons so far as relates to the services rendered. No costs were taxed to the Referee, but a fee was allowed him in lieu thereof. "When parties agree *orally* that a Referee may charge over $3 a day, they *cannot* afterward object to his charge in excess of $3."—*Thurman* vs. *Fiske,* 30 How., 397. And in *Philben* vs. *Patrick,* 22 How., 1, "an oral agreement made by the parties to the action, in the presence of the Referee, as to his allowance for fees, and entered by him on his minutes, is an agreement in writing within the meaning of Section 313" of the New York Code, which is Section 339 of the Code of Procedure of South Carolina.

5. The Act of 1827 (6 Stat., 335,) allowed to Commissioners "for each day engaged in holding references, $1;" and "for swearing all the witnesses on reference before him or on trial in Court, $1." *McDonald* vs. *Williams*, Rice Eq., 296, decides that, under the Act cited, "the demand of each creditor is to be considered a separate and independent suit, and fees were allowed on each demand for every day's necessary attendance." The Act of 1859 (12 Stat., 786,) entitled "An Act to *enlarge* the powers of the Commissioners in Equity in this State in certain respects, though it reduces the fees of Solicitors with respect to the number of demands presented on the same day, in no wise restricts Masters and Commissioners to the same rule, so the charge of two dollars on each demand established on oath, one for reference and one for swearing witnesses in each suit, allowed to the Commissioner is correct.

6. The rejection of the claim for costs and fees incurred by the purchaser in resisting homestead exemption in the lands sold as the estate of the testator is correct. The land was sold under these proceedings by the Sheriff, and the application for the homestead was made in the Probate Court, during the pendency of this action. Passing by all questions of warranty, express or implied, of title acquired at Sheriff's sale, and all question of jurisdiction of an inferior Court over matters undergoing full and thorough investigation in a higher tribunal, the resistance was successful, (the application being abandoned,) and the warranty was made good, whether there was any liability, therefore, on the part of the testator's estate or not. It is expressly declared in the case of *Jeter* vs. *Glenn*, 9 Rich., 374, that *counsel fees* paid by the purchaser *cannot* be recovered against the vendor in actions of this kind.

The opinion of the Court was delivered by

WILLARD, A. J. The questions submitted relate to costs in a suit commenced prior to the Code of Procedure, by bill in equity by an executrix to call in creditors, marshal assets, &c, and transferred to the Court of Common Pleas upon the abolition of the Courts of Equity. The questions will be considered as they are raised by the appellant's propositions of law and fact.

It is not necessary to consider the first proposition submitted, namely, that since the adoption of the Code costs cannot be taxed

on account of proceedings previously had under the former laws then prevailing as to costs; for it was conceded by all the counsel, upon the argument, that the costs in the Court of Equity were taxed in that Court while the former laws on that subject were in force, and that no appeal was taken from such taxation, and that such taxation embraced all the items objected to by the appellants which relate to and grow out of the proceedings prior to the transfer of the cause to the Court of Common Pleas.

The item of $256 allowed to the late Commissioner, mentioned in the second proposition, and the item of $355 to the attorney for the plaintiff, mentioned in the fourth proposition, belong to the class just mentioned. Having been taxed in the Court of Equity and no appeal having been taken, the right of the parties in whose behalf they were so taxed became absolute and are unaffected by any subsequent change in the laws relating to costs.

The third proposition relates to an item allowed in the Court of Common Pleas in the following terms: "Fee to Referee Johnstone, $300."

Section 337 of the Code authorizes the fees of officers to be included among the disbursements to be allowed in addition to costs. Section 339 declares that "the fees of Referees shall be three dollars to each for every day spent in the business of the reference; but the parties may agree in writing upon any other rate of compensation." It does not appear that any such agreement of the parties was produced. Unless such an agreement appears in writing, the fees of the Referee should be computed at the rate prescribed by Section 339. The allowance of a gross sum, as the present allowance appears to have been, was not in conformity with Section 339 and should be set aside.

The facts to which the fifth proposition submitted by the appellants relate appear to be as follows: A house and lot, part of the testator's estate, having been sold under proceedings in this cause, a claim of homestead adverse to the purchaser was set up by third parties. At the request of the attorneys for creditors who had appeared, the plaintiff's attorney defended this proceeding.

The attorneys for the creditors have agreed in writing that the costs of this defense, amounting, according to the report of the Referee, to $172.90, should be paid out of the fund. To this the parties interested in the testator's estate object. No other proof is offered for charging this as a debt of the estate than the consent of

the attorneys for the creditors. The Referee disallowed the item and the Court sustained his conclusion. The charge is not either one of costs or of disbursements, for the services alleged were not rendered in this cause. The creditors having consented to this form of compensation to the plaintiff's attorney, doubtless to relieve the fund from a possible claim by the purchaser for indemnity, there is no reason why their shares of the fund should not be charged in accordance with their consent. As they have no power to affect the rights of other parties who did not unite in such consent, the item in question can only be charged against the creditors. As the creditors are appellants, and as, if they desire so to do, they can modify the order so as to bind their shares in accordance with their consent, it is not necessary that the order should be disturbed.

The sixth proposition of the appellants is not explained by any statement appearing on the Referee's report or in any part of the proceedings, except in the statement made in the sixth exception to the Referee's report of July 25th, 1873.  The language of an exception is not the source from which can be properly derived the facts and circumstances by which the Referee's report can be tested.

If the parties prejudiced by a report wish to object to it, they must procure a statement of all that is necessary for the information of the Court, to be made out in the manner pointed out by the Code. The language of an exception is not a substitute for such a statement.

The orders appealed from should be modified in the manner hereinbefore pointed out and the cause remanded to the Circuit Court.

*Moses,* C. J., and *Wright,* A. J., concurred.